UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVA HUNTSINGER, individually
and as the personal representative of the
ESTATE OF THOMAS HUNTSINGER,

       Plaintiff,                      Civil No. 04-787-HA

  v.

                                        OPINION AND ORDER

THE SHAW GROUP, INC., BENEFITS BY
DESIGN, BENEFITS ADMINISTRATOR, and
UNUM PROVIDENT CORP.,

       Defendants.

HAGGERTY, Chief Judge:

Plaintiff is the surviving spouse of Thomas Huntsinger (Huntsinger), a deceased former employee of the now-bankrupt IT Group, Inc. (IT Group), and serves as the personal representative for Huntsinger's estate. Defendants are The Shaw Group (Shaw), which

purchased IT Group's assets in bankruptcy; Benefits by Design, the employee welfare plan of the IT Group; Benefits Administrator, the administrator for Benefits by Design; and Unum Provident (Unum), which sold life insurance products to Huntsinger's employers.

This is an action filed pursuant to 29 U.S.C. § 1132(e)(1) seeking recovery of benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* (ERISA). In her Complaint, plaintiff avers that her husband obtained life insurance as a benefit of his employment with the IT Group. She alleges that the IT Group's employee welfare plan provided for a portable life insurance benefit, and that after Huntsinger's termination she and her husband sought, but were deprived of, the information they needed to convert his policy. Shortly thereafter, Huntsinger died.

Plaintiff alleges that all defendants breached fiduciary duties under 29 U.S.C. § 1109; Unum improperly denied benefits under 29 U.S.C. § 1132; all defendants wrongfully interfered with plaintiff's receipt of benefits under 29 U.S.C. § 1140; and that, consequently, defendants are liable for penalties.

Shaw and Unum both move for summary judgment. Oral arguments were heard on September 26, 2005.

On September 29, 2005, plaintiff filed Motions to Compel additional discovery against Unum and Shaw. The discovery requested is unrelated to the motions for summary judgment, and would not impact the court's ruling. In light of the ruling set out below, the additional discovery requests are superfluous.

/ / /

/ / /

## FACTUAL BACKGROUND

Huntsinger commenced employment with W&H Pacific, Inc. (W&H) on December 30, 1999 and obtained $500,000 of group life insurance coverage. In May 2000, the IT Group purchased W&H. Following this purchase, Huntsinger enrolled under the IT Group plan and obtained Basic Group Life and Optional Group Life insurance coverage in the amount of $480,000. This plan contained an exclusion clause for suicide occurring within two years from the start of the insurance coverage.

Defendant Unum was the insurer of the life insurance benefits for both W&H and the IT Group. Under both the W&H and IT Group plans, Huntsinger had the right to "convert" his life insurance, changing it from a group policy to an individual policy, or to "port" the Optional Group Life portion of his coverage, maintaining the group policy but with Huntsinger making payments directly to Unum for the coverage.

On July 31, 2000, Huntsinger's employment with the IT Group was terminated. After his termination, Huntsinger and plaintiff requested an application to convert or port his life insurance. The IT Group failed to provide Huntsinger with the necessary forms, and Huntsinger failed to either convert or port his life insurance.

Huntsinger began working for Century West Engineering (Century West) in April 2001, and obtained group life insurance coverage with Century West in the amount of $200,000. Huntsinger died from a self-inflicted gunshot wound in October 2001.

In January 2002 the IT Group filed for bankruptcy. In April 2002 Shaw purchased the assets of the IT Group. The bankruptcy court approved the acquisition of the IT Group's assets "free and clear" of all claims. The purchase included the assets of W&H, which the IT Group

had acquired previously. Shaw continued to operate the IT Group's business with the same employees and equipment.

In May 2002, plaintiff submitted an insurance claim to Unum on behalf of Huntsinger under the Century West group policy. Unum paid plaintiff $200,000 on this policy in May 2002.

In January 2003, plaintiff submitted a second notice of claim for benefits to Unum, the Benefits Administrator, the IT Group, and W&H. This claim was brought under Huntsinger's group policies while employed at W&H and the IT Group. Plaintiff mailed her claim to the Benefits Administrator at Shaw's Human Resources Department. Plaintiff also requested copies of the applicable employee benefit plan, any summary plan description, and any statement of rights.

On March 13, 2003, Unum declined to process this claim for benefits, asserting that the claim could only be processed by the policy holder. Plaintiff then requested that the Benefits Administrator, the IT Group, W&H, and Shaw complete the policy holder form.

None of these defendants submitted the signed policy holder form, and each refused to forward the claim to Unum for processing. These defendants also failed to provide information to plaintiff as to where or how to process the claim or how to convert Huntsinger's life insurance policy.

On July 23, 2003, plaintiff advised Unum that no policy holder entity would agree to forward the claim to Unum. Plaintiff then re-submitted the claim to Unum, contending that no policy holder existed.

On August 7, 2003, Unum denied plaintiff's claim after determining that no coverage was in effect as of the date of Huntsinger's death. Unum also noted that benefits were precluded

under the suicide exclusion clause, because Huntsinger died less than twenty-four months from any possible effective date of coverage of the policy.

Plaintiff appealed. On November 11, 2003 Unum denied the appeal on the basis that no policy was in effect at the time of Huntsinger's suicide. This suit was filed on June 10, 2004.

## **STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(c).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). In other words, "[w]hen the

moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Employee Retirement Income Security Act of 1974, § 29 U.S.C. 1132, provides that a participant or beneficiary may bring a civil action to recover benefits due or to enforce his or her rights under the terms of the plan. § 29 U.S.C. 1132(a).

## ANALYSIS

Defendant Unum seeks summary judgment because Huntsinger did not timely port or convert his life insurance coverage and so lacked a valid policy at the time of his death. Moreover, Unum argues, even if Huntsinger had a valid policy, the policy's suicide exclusion barred any recovery.

Defendant Shaw argues it is entitled to summary judgment because it was released from any liability as a successor in interest to the IT Group through the Bankruptcy Order under which it purchased the IT Group.

After oral argument, the court asked the parties to provide supplemental briefing as to whether any claims would survive against defendants if the court found that the suicide exclusion provision would have barred recovery by plaintiff. This issue is addressed first.

**Suicide Exclusion Clause**

Defendant Unum argues that the suicide exclusion clause would have prevented plaintiff from collecting on Huntsinger's policy as a matter of law and therefore plaintiff has no valid

claims against Unum. Plaintiff responds that although Huntsinger died of self-inflicted gunshot wound, he did not commit suicide as the term is used in the Unum life insurance provision.

The court has reviewed the parties' positions and concludes that Huntsinger's death was a suicide as the term is used in the insurance policy. Plaintiff's argument to the contrary is unavailing. The court "interepret[s] terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) (citation and quotation omitted). The ordinary interpretation of suicide is the "intentional taking of one's own life." *Webster's Encyclopedic Unabridged Dictionary* 1901 (2001). The evidence shows that Huntsinger intentionally took his life and therefore committed suicide within the meaning of the suicide exclusion.

Huntsinger's death certificate lists the manner of death as suicide. Plaintiff had the death certificate corrected to add major depression as an "other significant condition," but the listed manner of death was not altered. Moreover, plaintiff has admitted under oath that Huntsinger's death was a suicide and has argued in other court proceedings that his death was a suicide. See Affidavit of Rachel A. Yates (Yates Aff.), Ex. A at 2-3 (plaintiff stated under oath that "since [Huntsinger] committed suicide" she did not receive life insurance benefits); Yates Aff., Ex. B at 2 (plaintiff stated that she "got cash even though [Huntsinger] committed suicide"); Yates Aff., Ex. C at 3 (plaintiff stated she was under enormous stress because her "husband had just committed suicide"); Yates Aff., Ex. D at 2-3 (plaintiff asserted in a brief filed in a Colorado court that she "only seeks to offer evidence of her husband's suicide to show [defendant's]

motive, intent and plan and to explain her failure to seek employment after Mr. Huntsinger's death").

Plaintiff also argues that Unum did not list the suicide exclusion clause as a basis for its denial of plaintiff's appeal, so therefore cannot now rely upon the clause. The court performs a *de novo* review of a plan administrator's decision to deny a claim. *Walker v. American Home Shield Long Term Disability Plan,* 180 F.3d 1065, 1069 (9th Cir.1999). The court may "consider[] anew both the legal and factual aspects of [the] claim" and so may consider a suicide clause even if it is outside the administrative record. *Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 995 (9th Cir. 2000).

Additionally, Unum referred to the suicide exclusion in its initial denial of plaintiff's claim. Therefore, although Unum did not refer to the suicide exclusion in its denial of plaintiff's appeal, the suicide exclusion is in the record as a basis for denying plaintiff's claim.

Plaintiff argues in the alternative that even if Unum could rely on the suicide clause and Huntsinger had committed suicide, he had sequential life insurance policies that were in effect since April 1998 and that the suicide should be deemed to have occurred well after the twenty-four month exclusionary period. Plaintiff contends that based on Unum's Discontinuance and Replacement guidelines, Huntsinger should be credited for his prior Provident group insurance as a W&H employee, individual coverage with MetLife, and MetLife group insurance as a Dames & Moore employee, resulting in a date of issuance of April 1998.

Discontinuance and Replacement coverage credit is designed to protect employees when employers (not employees) change insurance carriers. Assuming, *arguendo*, that such credit applied here, Huntsinger's "credit" dates back to his prior group policy through W&H, because

the transition from the W&H Provident policy to the IT Group Unum policy was based on a change from the employer. This would result in a policy issuance date of December 30, 1999, twenty-one months prior to Huntsinger's suicide.

Although plaintiff argues that Discontinuance and Replacement credit should also be given for Huntsinger's individual policy with MetLife and the group policy with his former employer, Dames & Moore, this position is without merit. Unum's Discontinuance and Replacement policy applies when *the employer*, as the policy holder, changes life insurance. The credit is inapplicable when an employee changes jobs or switches from an individual policy to a group policy. Affidavit of William T. Patton, Ex. B, at 3.

Plaintiff also asserts that the suicide clause should bar recovery only of the portion of the policy that Huntsinger paid for, and not the employer-paid portion of the policy. Plaintiff argues that the IT Group policy is similar to the Century West policy, under which Unum paid benefits despite a suicide exclusion clause because the policy premiums were paid by the employer. The court ruled on this issue in its June 14, 2005 Order. The language of the two life insurance policies is unambiguous; the suicide exclusion in the IT Group policy applies regardless of who paid the premiums, whereas the suicide exclusion in the Century West policy applies only to amounts of insurance for which the person seeking benefits paid all or part of the premium.

The court finds that even had Huntsinger converted or ported his life insurance policy, recovery by plaintiff would have been barred as a matter of law because of the suicide exclusion. The impact of this bar on plaintiff's claim is discussed below.

/ / /

/ / /

**Plaintiff's Claims For Relief**

Plaintiff's First Claim for Relief seeks recovery from all defendants under 29 U.S.C. § 1109 for breach of fiduciary duty. Plaintiff alleges defendants' breach "caused the loss of plaintiff's life insurance benefits." Complaint ¶ 22. Because benefits were barred by the suicide exclusion, any alleged breach of fiduciary duty caused no harm. Without causation, plaintiff has failed to state a valid claim for breach of fiduciary duty. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) (requiring proof of causation for fiduciary liability).

Moreover, § 1109 "only allows recovery for injury to the plan itself. Individual beneficiaries may bring fiduciary actions against the plan fiduciaries, but they must do so for the benefit of the plan and not their individual benefit." *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995); *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985) (holding that actions based on breach of fiduciary duty must inure to the benefit of the plan as a whole); *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417-18 (9th Cir. 1991) (same). Although plaintiff argues she seeks restitution, she is, in fact, seeking individual monetary compensation. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (noting that "almost invariably" suits which seek to "compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'"); *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255 (1993) (finding that although plaintiffs "dance[d] around the word" the relief they sought was not restitution but was "nothing other than compensatory damages - monetary relief for all losses" and was therefore unavailable). Accordingly, the remedy sought by plaintiff is unavailable for a fiduciary breach under ERISA.

Plaintiff's Second Claim for Relief seeks recovery of life insurance benefits from Unum. Complaint ¶ 23. In light of the court's finding that such benefits were barred as a matter of law, this claim is dismissed.

Plaintiff's Third Claim for Relief seeks recovery from all defendants under 29 U.S.C. §1140 for discrimination and wrongful interference with attainment of benefits. As with plaintiff's First Claim for Relief, the fact that the policy's suicide exclusion would have prevented plaintiff from recovering any benefits results in a lack of causation. Additionally, the remedy sought by plaintiff is individual money damages, which, as noted above, is not authorized for a fiduciary breach under ERISA. *See Mertens,* 508 U.S. at 255; *Russell*, 473 U.S. at 140; *Cinelli*, 61 F.3d at 1445.

Moreover, claims under § 1140 require, as a "fundamental prerequisite," an allegation that the parties' employer-employee relationship was "changed in some discriminatory or wrongful way." *Deeming v. Am. Standard, Inc.* 905 F.2d 1124, 1127 (7th Cir. 1990); *cf. Lojek v. Thomas*, 716 F.2d 675, 680 (9th Cir. 1983) ("ERISA's legislative history . . . reveals that Congress was concerned with the acts of unscrupulous employers who discharged and harassed their employees in order to keep them from obtaining vested pension rights."). Plaintiff does not allege Huntsinger's employer-employee relationship was changed in a discriminatory way.

Plaintiff argues Huntsinger was discriminated against after he was terminated because he was deprived of information necessary to convert or port his life insurance. This is insufficient to state a § 1140 discrimination claim. Any alleged discrimination against Huntsinger occurred after he was terminated and did not affect his employment relationship. *See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefits Pension Plan*, 24 F.3d 1491, 1503 (3rd Cir. 1994)

(finding that § 1140 discrimination claims are "limited to actions affecting the employer-employee relationship."); *see also McGath v. Auto-Body North Shore, Inc.,* 7 F.3d 665, 669-70 (7th Cir. 1993) (finding no violation of § 1140 because the employment relationship was not affected, even though the employer twice amended the eligibility requirements for its pension plan one day before plaintiff was eligible, and enforced the eligibility rules disparately against the plaintiff).

Plaintiff's Fourth Claim for Relief seeks recovery under 29 U.S.C. § 1132(c), alleging that all defendants failed to provide information required under ERISA. This claim is unaffected by the applicability of the suicide clause. Claims under § 1132(c) may only be brought against the designated plan administrator, and if there is no designated administrator, then the plan sponsor. *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir. 1989). The IT Group policy did not have a designated plan administrator. The plan sponsor, as defined in ERISA, is the employer. 29 U.S.C. § 1002(16). Huntsinger's employer and plan sponsor was the IT Group. Therefore, this claim is dismissed on these grounds against all defendants except Shaw, the successor in interest to the IT Group.

Shaw argues that its liability as a successor in interest to the IT Group is barred by the Bankruptcy Order approving its purchase of the IT Group's assets. The Bankruptcy Order states

> the Assets shall be transferred to Shaw . . . free and clear of all interests . . . and liens . . . and Shaw shall not be liable in any way for any Claims that any of the foregoing or any third party may have against any of the Debtors. . . . The transfer of the Assets pursuant to the Sale shall not subject Shaw to any liability, except as set forth in the [Asset Purchase] Agreement, with respect to the operation of the Debtors' businesses prior to the Closing Date.

\* \* \*

> [A]ll persons and entities . . . holding Claims of any kind or nature whatsoever against or in the Debtors or the Assets . . . hereby are forever barred, estopped, and permanently enjoined from asserting against Shaw . . . such persons' or entities' Claims.
>
> * * *
>
> Except as provided in the [Asset Purchase] Agreement, Shaw shall not be responsible for any employee wages, benefits . . . or other amounts related to employee Claims.

Bankruptcy Order, *In Re: The IT Group*, ¶ 7, page 13 ¶ 7, page 15 ¶ 10, page 30 ¶ 47. This court took judicial notice in its January 18, 2005 Order that the Bankruptcy Court ruled that Shaw was not liable for any third party claims.

Plaintiff argues that enjoining successor liability claims in the context of ERISA is beyond the subject matter jurisdiction of the Bankruptcy Court and violates the Due Process Clause. This court concludes that these arguments amount to an impermissible collateral attack on the decision of the Bankruptcy Court. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (finding collateral attacks on a Bankruptcy Court injunction "cannot be permitted . . . without seriously undercutting the orderly process of the law"). The *Celotex* Court recognized that "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Id.* (quotation and citation omitted). If plaintiff believed the Bankruptcy Order was improper, she "should have challenged it in the Bankruptcy Court." *Id.*

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, Unum's Motion for Summary Judgment [41] and Shaw's Motion for Summary Judgment [30] are granted. The claims against all defendants are dismissed with prejudice. Plaintiff's Motions to Compel [117, 120] are denied as moot.

IT IS SO ORDERED.

DATED this  23   day of January, 2006.

_____/s/ Ancer L.Haggerty_____
ANCER L. HAGGERTY
United States District Judge